# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>**LANCE B. HAYNIE,**<br><br>    Debtor. | **Case No. 17-20587-TLM** |
| **JACK KRYSTAL,**<br><br>    Plaintiff,<br><br>v.<br><br>**LANCE B. HAYNIE,**<br><br>    Defendant. | **Adv. No. 17-07010-TLM** |

## MEMORANDUM OF DECISION

In this adversary proceeding, plaintiff Jack Krystal ("Krystal") contends a state court judgment against chapter 7 debtor and defendant Lance B. Haynie ("Haynie") should be excepted from discharge under § 523(a)(2)(A), (4), and (6).[1]  That judgment awarded Krystal damages for Haynie's usurpation of a business opportunity created jointly by Krystal and Haynie.

A trial was held on March 2–5, 2020, and the evidentiary record was closed on April 8, 2020.  Doc. No. 59 at 1.  The parties presented closing arguments on April 13,

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532.

2020.  After considering the evidence, the parties' arguments, and applicable authorities, this Court enters the following findings of fact and conclusions of law.

**JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and all issues before it are core matters on which it may enter final decisions under 28 U.S.C. § 157.  Pursuant to Bankruptcy Rules 7008 and 7012, the parties expressly consented to this Court entering final judgment.

**FACTS**

Krystal and Haynie met at a business convention in Florida around 2002.  The two began a working relationship where each would provide services towards various projects.  For example, Krystal utilized Haynie's skillset in telecommunications and network solutions in Krystal's real estate development projects.  Krystal lived and operated his businesses in California, and Haynie lived and worked in Spokane, Washington.

Haynie was employed by an internet company, Tsunami Communications, Inc. ("Tsunami"), which was owned by Cory Colvin and Michael Funk.  Tsunami owned Sanswire of Spokane, Inc. ("Sanswire"), which provided internet services in the greater Spokane, Washington area.  Haynie became aware that Sanswire was struggling, and he informed Krystal of the opportunity to buy the company.  In early 2003, Haynie and Krystal discussed forming a company that would purchase Sanswire and provide internet services.  Krystal and Haynie memorialized their discussions in a handwritten document that the parties referred to as the "Deal Points."  Ex. 100.

MEMORANDUM OF DECISION - 2

The Deal Points outlined the parties' ideas regarding the formation, ownership, management, funding, profit distribution, employees, and initial objectives of a to-be-formed LLC. Ex. 100. The Deal Points stated that Krystal would have a 30 percent interest in the LLC and Haynie would have a 70 percent interest of which 40 percent could be sold to future investors. Krystal was to lend the LLC up to $100,000 in $25,000 increments. Krystal was to be the "CEO" and Haynie the "President." Haynie's company, LBH Communications, would form the LLC. The Deal Points provided a structure for distributing profits under which Haynie would receive a percentage of the profits exceeding certain specified amounts, and Krystal would receive one-third of the amount to which Haynie was entitled. These Deal Points were written in early 2003, but were initially unsigned.

On June 4, 2003, Haynie formed Stat Network Solutions, LLC ("Stat"). Ex. 102 at 1; Ex. 208. Stat's limited liability company agreement ("LLC Agreement"), Ex. 102, named Haynie as the sole member. *Id.* at 3. The LLC Agreement provided: "The Company shall engage in the business of the sales, installation and service of computer and communication systems and networks." *Id.* Krystal explained he was unaware of the formation of Stat for two to three months after it occurred.

On June 15, 2003, Haynie executed a promissory note on behalf of LBH Communications and himself individually by which he agreed to repay with interest a $20,000 loan from Krystal's real estate company, Diversified Realty Services ("Diversified"). Ex. 117. Haynie explained that these funds were used to purchase equipment to provide internet services to Eastern Washington University.

MEMORANDUM OF DECISION - 3

On August 19, 2003, Stat purchased Sanswire for $100,000.  Ex. 104.  In further consideration for this purchase, Cory Colvin and Michael Funk were made members of Stat, each holding a 5 percent membership interest therein.  Ex. 104 at 2, ¶ C.

On August 26, 2003, Haynie executed a promissory note on behalf of LBH Communications, and himself individually, by which he agreed to repay with interest another loan of $100,000 from Diversified.  Ex. 118.  Haynie explained these funds were used to purchase Sanswire and its equipment.

Around October 25, 2003, Haynie emailed Krystal and requested another loan of $25,000 in order to purchase equipment for Stat.  *See generally* Ex. 105.  Krystal agreed by email.  *Id*.  Krystal's email alluded to ongoing discussions he, Haynie, and Haynie's attorney, Cynthia Schwartz, had regarding the preparation of "documents that describe[ed] the terms of [their] agreement."  *Id*.  Krystal also requested

> "a print out and pertinent schedules reflecting the consolidated categorized revenue and expenditures of the Business since its inception to a current date and the list of accounts receivables, payables and amount and type of work lined up for the future.  You may have also prepared an estimated itemized budget of monthly revenues and expenses, which would be useful in planning and making future financial decisions."

*Id.*  Krystal explained that he requested this information as an "owner" of the business.  Haynie agreed to talk with Cynthia Schwartz, send a signed promissory note, and provide the financial information requested.  *Id.*  A few days later, on October 27, 2003, Haynie executed a promissory note on behalf of LBH Communications, and himself individually, by which he agreed to repay $25,000 loaned by Diversified.  Ex. 119.  Krystal never received the requested, and promised, financial information.

MEMORANDUM OF DECISION - 4

On November 17, 2003, Cynthia Schwartz emailed Haynie drafts minutes for a meeting, by which the members of Stat would agree to admit Krystal as a member with 30 percent ownership. Ex. 107.[2] Cynthia Schwartz suggested these minutes be backdated to a date after the Sanswire purchase because Krystal was not named on the purchase agreement. *Id.* at 1. Based on this suggestion and the lack of signatures on these minutes, it does not appear that such a meeting admitting Krystal actually occurred, and the minutes regarding this alleged meeting were not officially adopted. *Id.* Krystal objected to these proposed minutes and Schwartz's backdating suggestion, writing:

> Cynthia must make the appropriate changes to the [] documents and our agreement to reflect the correct date that you and I agreed to the terms, our share of ownership, salaries, income, future investors or shareholders, the amount of loans, and our share of LBH and the new companies, Stat and Sanswire of Spokane. This goes back to the beginning of the year, when we drafted and agreed to the terms of our agreement and you took it to Cynthia for her to prepare the contract. The loans have been funded and we have proceeded ahead on those terms since. We have told everyone of our envolvement [*sic*] and they have known that as our dela [*sic*] with them evolved and was finally signed. You signed it in [*sic*] behalf of our company and not as an individual or a single shareholder. If Cynthia drafted the Agreement to state that she made a mistake and that must be correcte [*sic*] through an addendum or clarification statement to be signed by everyone that participated in the transaction. She knew that we had made a deal and should have taken that into account to properly disclose my envolvement [*sic*] in the contract.

*Id.*

On December 16, 2003, Krystal and Haynie signed the Deal Points. Ex. 100. On the same day, Krystal and Haynie also signed a typed document that had nearly identical

---

[2] Exhibit 107 is an email thread originating from an email between Haynie and Cynthia Schwartz containing two draft Stat meeting minutes. That email was forwarded to Krystal. The exhibit also contains Krystal's response to the forwarded email.

terms as the handwritten Deal Points, but also had material differences.  Ex. 101 ("Typed

Deal Points").[3]  Of note, the Typed Deal Points provided a more complete picture of what

business objectives would be, or had already been, achieved; adjusted the amounts to be

lent by Krystal from increments of $25,000 to a range of $20,000–$25,000; and listed the

titles for Krystal and Haynie as "Chairman" and "CEO/President" respectively.  *Id.*

On July 29, 2004, Haynie executed an agreement to sell 50 percent of Stat to Tom

Davis for $650,000.  Ex. 103 ("Davis Agreement").  The Davis  Agreement also provided

that Haynie was to use a portion of the $650,000 to repay Krystal $130,000 which

Diversified loaned.  *Id.*  Haynie repaid the loans made by Diversified.

In 2007, Krystal sued Haynie, Stat, and Tom Davis in the Superior Court of the

State of Washington in Spokane.  On April 20, 2007, Krystal filed his "Amended

Complaint for Accounting, Damages, Breach of Contract and Declaratory Relief."  Ex.

123 ("State Complaint").  In the State Complaint, Krystal sought a declaratory judgment

that he was a 30 percent member of Stat, damages for breach of fiduciary duties, damages

for conversion, an accounting of the financial affairs of Stat, and damages for Haynie's

conduct in managing LBH Communications.  *Id.*

In October 2009, the state court held a trial on the issue of the "existence (or

nonexistence) and percentage, if any, of plaintiff Jack Krystal's ownership interest in

defendant Stat Network Solutions, LLC."  *See* Ex. 127 at 1–2 ("First State Judgment").

According to the First State Judgment, entered on November 18, 2009, the parties had

---

[3] The Typed Deal Points were prepared by Michael Funk at the direction of Haynie.

MEMORANDUM OF DECISION - 6

agreed to limit the issues considered.  The First State Judgment also noted that Haynie had affirmatively waived his right to participate as a party, but gave testimony as a witness.  *Id.*  The state court concluded that "Krystal is not now, nor has he ever been the owner of any membership interest in Stat."  *Id.* at 6.  On June 9, 2011, the First State Judgment was affirmed in an unpublished decision by to the Court of Appeals of the State of Washington.  Ex. 215.

On June 18, 2012, the Superior Court of the State of Washington took up the remaining issues in Krystal's state action against Tom Davis, Haynie, and Stat.[4]  Ex. 128 at 3.  Haynie did not appear, and the state court declared Haynie to be in default on all claims against him, reserved the issue of damages, and dismissed Haynie's counterclaim.  *Id.*  Haynie was sent notice of the default at the following addresses: 8705 East Boardwalk Lane in Spokane, Washington and 2170 Bellerive Lane in Coeur d'Alene, Idaho.[5]  *Id.* at 1–2

On August 9, 2012, the state court held a trial on damages.  Ex. 129.  Haynie did not appear.  However, Krystal testified and provided certified transcripts of the testimony given by Haynie, Sheila Selder, and Tom Davis at the first trial.  *Id.*  An additional nine exhibits were presented to, and admitted by, the state court.  *Id.*  On August 12, 2012, the

---

[4] While both trials arose under Case No. 2007-02-00833-5, different judges presided over the bifurcated trials.  *See* Exs. 127–129.

[5] Haynie testified in the trial before this Court that he moved from 8705 East Boardwalk Lane in Spokane in 2007.  During the first portion of the state court litigation in 2009, Haynie testified his address was 2170 Bellerive Lane in Coeur d'Alene.  Ex. 134 at 4 (internal p. 261).

state court issued its "Findings of Fact and Conclusions of Law and Order for Judgment (the "Second State Judgment")." *Id.*

The Second State Judgment's findings of fact differ considerably from the First State Judgment in that they favor Krystal's position that the Deal Points and Typed Deal Points were binding agreements; more fully narrate the parties' dealings with respect to the resolution of the alleged deficiency in the formation of Stat; and address the distribution of $250,000 in profits to Haynie. *Id.* at 2–3. Further, the Second State Judgment also determined that Haynie breached the Deal Points agreements by forming Stat without Krystal; refusing to pay Krystal half of the proceeds of the sale to Davis; and refusing to pay Krystal one-third of the profits distributed to Haynie. *Id.* at 4–5. The court awarded Krystal $798,141.94 in damages with post-judgment interest of 12 percent. *Id.* at 6. Krystal was also awarded $200.00 in costs. Ex. 130 at 2.

Krystal now argues the debt established by the Second State Judgment is non-dischargeable under § 523(a)(2)(A), (4), and (6), and this judgment is preclusive. Haynie argues that the Second State Judgment is not preclusive as Haynie did not have notice of the continued action, and the First State Judgment should instead be given preclusive effect.

**DISCUSSION & DISPOSITION**

**A.      Preclusive Effect of State Court Judgments in the Bifurcated Trial**

Though this adversary proceeding was tried in full, the state court's judgments may still have preclusive effect on this Court's determination of certain factual issues. *Cf. Five Star Enters., Inc. v. Brock (In re Brock)*, 2009 WL 1559528, at *3–5 (Bankr. D.

MEMORANDUM OF DECISION - 8

Idaho June 2, 2009) (considering whether a prior state court judgment was entitled to preclusive effect after the bankruptcy court held a full trial on the merits); *Jensen v. White (In re White)*, 363 B.R. 157, 161–62 (Bankr. D. Idaho 2007) (same).  This Court previously held:

> Issue preclusion applies in § 523(a) dischargeability proceedings.  *Grogan v. Garner,* 498 U.S. 279, 284 n. 11 (1991); *Cal–Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119, 1123 (9th Cir. 2003); *Khaligh v. Hadaegh (In re Khaligh),* 338 B.R. 817, 824 (9th Cir. BAP 2006).  The doctrine precludes a party from relitigating an issue he actually litigated and lost in a prior proceeding.  *Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1114 (9th Cir. 1999); *Roussos v. Michaelides (In re Roussos),* 251 B.R. 86, 92 (9th Cir. BAP 2000).  Issue preclusion serves to protect litigants from multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication by reducing the likelihood of inconsistent judgments.  *Allen v. McCurry,* 449 U.S. 90, 94 (1980).
>
> Determining the issue preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued.  *Harmon v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir. 2001).

*In re Hyatt*, 2011 WL 6179267, at *5 (Bankr. D. Idaho Dec. 13, 2011).

The underlying state judgments in this case were issued in the State of Washington, so Washington law determines whether the judgments are preclusive.

Under Washington law:

> Collateral estoppel[6] may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding.  *Shoemaker,* 109 Wash. 2d at 507, 745 P.2d 858.  Further, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.  *Nielson v. Spanaway Gen. Med. Clinic, Inc.,* 135 Wash. 2d 255, 264–65, 956 P.2d 312 (1998).  For collateral estoppel to apply, the party seeking application of the

---

[6] "Collateral estoppel" is another term for issue preclusion.  BLACK'S LAW DICTIONARY 298 (9th ed. 2009).

MEMORANDUM OF DECISION - 9

doctrine must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Reninger,* 134 Wash. 2d at 449, 951 P.2d 782; *State v. Williams,* 132 Wash. 2d 248, 254, 937 P.2d 1052 (1997); *Claim and Issue Preclusion,* 60 Wash. L. Rev. at 831.

*Christensen v. Grant Cty. Hosp. Dist. No. 1,* 96 P.3d 957, 961 (Wash. 2004).

In this case, two judgments were entered in the state court litigation. The two judgments were issued by different judges within the same case. While the facts found by each judge follow the same timeline, the characterization of those facts and the conclusions reached in each judgement conflict. Predictably, the parties argue this Court should only give preclusive effect to the judgment that furthers their respective positions.

Where two conflicting judgments come before another court for consideration on the same issues, preclusive effect is given to the judgment that is last in time. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (citing *Americana Fabrics, Inc. v. L&L Textiles, Inc.*, 754 F.2d 1524 (9th Cir. 1985)). The Ninth Circuit explained:

> When two inconsistent judgments exist, it is tempting for a court to reexamine the merits of the litigants' dispute and choose the result it likes best. There are important reasons to avoid this temptation. First, if one party could have raised res judicata, but did not, that litigant must bear the cost of its tactic or inadvertence. *See* 18 Wright § 4404 at 26–27. Second, the most recent court to decide the matter may have considered and rejected the operation of the prior judgment as *res judicata,* and *its* decision should be treated as *res judicata* on the preclusive effect of the prior judgment. *See Americana,* 754 F.2d at 1530. Finally, the last in time rule is supported by the rationale that it "'end[s] the chain of relitigation . . . by stopping it where it [stands]' after entry of the [most recent] court's judgment, and thereby discourages relitigation in [yet another] court." *Id.* (quoting *Porter v. Wilson,* 419 F.2d 254, 259 (9th Cir.1969), *cert. denied,* 397 U.S. 1020, 90 S. Ct. 1260, 25 L. Ed. 2d 531 (1970)). Therefore, even when we think that the most recent

judgment might be wrong, we still give it *res judicata* effect so that finality
is achieved and the parties are encouraged to appeal an inconsistent judgment
directly rather than attack it collaterally before another court.  *See id.*

*Id.* at 322–23.  However, the judgment that is last in time must be entitled to preclusive

effect for the last in time rule to apply.  *Lopez v. Raicevic (In re Lopez)*, 2017 WL

443540, *7 (9th Cir. BAP Feb. 1, 2017), *aff'd,* 728 F. App'x 747 (9th Cir. 2018).

### 1.    Preclusive Effect of Second State Judgment

The Court finds no issue with the second, third, or fourth elements of issue

preclusion as announced in *Christensen*, 96 P.3d at 961.  However, the parties' arguments

and the nature of the prior and current proceedings require this Court to analyze the first

element (whether the issues decided in the Second State Judgment and the current

proceeding are identical), and also whether those issues were actually decided, and

whether Haynie had a full and fair opportunity to litigate those issues.

### a.    Full and Fair Opportunity to Litigate the Issues

Haynie argues he did not have notice of the second 2012 trial determining

damages because he had moved, and the notice of default was sent to the wrong address,

raising an issue of whether he had a full and fair opportunity to litigate the issues.  As

mentioned earlier, Haynie testified in the current proceedings that he moved from his

Spokane address in 2007, and that he did not give the state court his new address.

However, Ex. 134, which includes Haynie's testimony in the 2009 state court litigation,

establishes that Haynie gave the state court his new address—2170 Bellerive Lane in

Coeur d'Alene.  Ex. 134 at 4 (internal p. 261).  Haynie did not argue or testify to any

other moves during the course of the state court litigation, and only argued that this 2007

MEMORANDUM OF DECISION - 11

move deprived him of future notices in the state litigation.  In 2012, the state court sent

notice of default to both of Haynie's known addresses—8705 East Boardwalk Lane in

Spokane, Washington and 2170 Bellerive Lane in Coeur d'Alene, Idaho.  Ex. 128 at 3.

Based on the evidence produced by Krystal (Exs. 128 and 134), and Haynie's own

testimony that the move depriving him of notice of the 2012 proceedings occurred in

2007, the Court concludes Haynie's 2007 move did not affect his ability to participate in

the state court proceedings.  Haynie has not raised any other issues regarding notice of

the state court proceedings.  The Court, therefore, concludes Krystal met his burden to

show Haynie had a full and fair opportunity to litigate the issues determined in the

Second State Judgment.

### b.    Actually Litigated

The Second State Judgment was a default judgment.  There is little Washington

law addressing the preclusive effect of a default judgment, but the 9th Circuit BAP

stated:

> A review of the scant Washington law on this subject reveals that a default
> judgment cannot support the "actually litigated" requirement.  Washington
> law (like federal law) follows the Restatement (Second) of Judgments, which
> espouses the view that a default judgment should have no collateral estoppel
> effect.  *Restatement (Second) of Judgments* § 27 cmt. e (1982).  *See Nielson,*
> 135 Wash.2d at 262, 956 P.2d at 315 (citing *Restatement* ).  *See also* Lewis
> H. Orland and Karl B. Tegland, *Washington Practice,* Trial Practice § 368
> (West, 5th ed.1996).  *Cf. Lenzi v. Redland Ins. Co.,* 140 Wash. 2d 267, 279–
> 80, 996 P.2d 603, 609 (2000) (distinguishing between "claim" preclusion, as
> applied to a default judgment to bar all future claims that could have been
> litigated before, and issue preclusion, which applies "only to issues actually
> litigated") (quoting Philip A. Trautman, *Claim and Issue Preclusion in Civil
> Litigation in Washington,* 60 Wash. L. Rev. 805, 813–14 (1985)).

*Stephens v. Bigelow (In re Bigelow)*, 271 B.R. 178, 184 (9th Cir. BAP 2001) (citing.

*Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Boyovich (In re Boyovich),* 126 B.R.

348, 350–51 (Bankr. W.D. Wash.1991) (holding two default judgments did not satisfy

the "actually litigated" requirement)).

However, *Bigelow* and *Boyovich*, only address a "pure" default judgment, where

the defendant fails to appear or participate in trial up to the entry of default. *Id.*; *Miller v.*

*Apfel-Wilson (In re Apfel-Wilson)*, 165 B.R. 939, 941 (Bankr. W.D. Wash. 1994) (noting

the defendants *Boyovich* did not answer the complaint or participate in the litigation up to

the trial). In *Apfel-Wilson*, the Bankruptcy Court for the Western District of Washington

distinguished the application of a pure default in *Boyovich*, from the case where, as here,

the defendant participates before the entry of default:

> In *In re Boyovich*, . . . this Court held that, under Washington law, a default
> judgment cannot support the "actually litigated" element of the collateral
> estoppel doctrine. The present case is distinguishable from *Boyovich,* in that
> here the defendants actually answered the complaint and participated in the
> litigation up to the trial, and no order of default was entered. There is no
> Washington case on point.

165 B.R. at 941. There is still no controlling Washington law on this issue.

In addressing this precise issue in cases involving default judgments issued by

federal courts, the Ninth Circuit held in *In re Daily*, 47 F.3d 365 (9th Cir. 1995):

> In such a case the "actual litigation" requirement[] may be satisfied by
> substantial participation in an adversary contest in which the party is afforded
> a reasonable opportunity to defend himself on the merits but chooses not to
> do so.

> In *United States v. Gottheiner (In re Gottheiner),* 703 F.2d 1136 (9th
> Cir.1983), we approved use of collateral estoppel to establish the existence
> of a debt in bankruptcy although the prior judgment relied upon to establish

MEMORANDUM OF DECISION - 13

the debt rested on an unopposed motion for summary judgment. We deemed the requirement of "actual litigation" satisfied notwithstanding the debtor's failure to oppose the motion, stating:

> Gottheiner did not simply give up from the outset. For sixteen months he actively participated in litigation. . . . That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court. Under the circumstances we hold that . . . collateral estoppel properly was available to the [creditor].

*Id.* at 1140.

The same may be said here. Daily did not simply give up but actively participated in the adversary process for almost two years prior to the FDIC's motion for default judgment.

*Id*. at 368. The Court concludes that the Washington Supreme Court would adopt this approach to the actually litigated requirement and apply issue preclusion where the defendant participates in the litigation leading up to the entry of default judgment.

Here, Haynie answered Krystal's amended state court complaint, Ex. 124, and participated in the first portion of the bifurcated trial, even providing testimony. Thus, issue preclusion may be applicable if the state court based its judgment on a sufficient record. *See United States Auto. Ass'n v. Pair (In re Pair)*, 264 B.R. 680, 684 (Bankr. D. Idaho 2001); *see also Boyovich,* 126 B.R. at 350 (finding a record consisting of only an affidavit, the complaint, and the case file as insufficient for the "actually litigated" requirement). Krystal presented the state court with "his own testimony in person as well as the testimony of Lance Haynie, Sheila Selder, and Thomas Davis by certified transcript . . . [and] nine (9) exhibits." Ex. 129 at 1.

MEMORANDUM OF DECISION - 14

Therefore, based on Haynie's participation in the proceedings leading up to the

Second State Judgment, and the robust evidentiary record considered by that state court,

the actually litigated element is satisfied.

### c.    Identical Issues

Though this Court has exclusive jurisdiction over the dischargeability of debts

under § 523, the state court decided some issues identical to those before this Court.

First, the state court determined the Deal Points was an enforceable and binding contract

between Krystal and Haynie.  Ex. 129 at 4.  Second, Haynie breached the contract.  *Id.*

Third, Haynie's breach was intentional and wrongful.  *Id.*  And fourth, Krystal was

entitled to $798,141.94 in damages with post-judgment interest and costs of $200.00.  *Id.*

at 5–6; Ex. 129 at 2.

Therefore, the Court concludes the Second State Judgment is entitled to preclusive

effect on these proceedings.  The Court must now turn to whether the elements of

§ 523(a)(2)(A), (4), and/or (6) have been met by those findings and conclusions and by

the evidentiary record as a whole in this adversary proceeding.

## B.    Nondischargeability grounds asserted

### 1.    Section 523(a)(2)(A)

Krystal asserts the debts Haynie owes him under the Second State Judgment are

not dischargeable under § 523(a)(2)(A), which excepts from discharge "any debt . . . for

money, property, services, or an extension, renewal, or refinancing of credit, to the extent

obtained by . . . false pretenses, a false representation, or actual fraud, other than a

MEMORANDUM OF DECISION - 15

statement respecting the debtor's or an insider's financial condition." To prove this

cause, a creditor must establish:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001).

In this case, there are multiple alleged representations that plausibly give rise to a

claim of nondischargeability under § 523(a)(2), but each must meet the tests under

*Harmon* and related precedent.[7]

Haynie made multiple misrepresentations concerning the formation of the business

with Krystal and the share of the business' profits to which Krystal was entitled. Haynie

never made Krystal a member of Stat. Indeed, he did not even immediately inform him

of the formation of the business. And, those promised profits were not paid but, rather,

were retained by Haynie, who continually told Krystal he was working on correcting the

membership structure of Stat and that the mistake in forming Stat as a one-member LLC

was that of attorney Schwartz. The evidence did not bear out those claimed efforts. The

Court finds Haynie's failure to sign the minutes admitting Krystal as a member of Stat,

his failure to provide requested and promised financial records, and his continued draws

on the profits of Stat without compensating Krystal, demonstrate that Haynie did not

---

[7] For example, Diversified made several loans in reliance on promises Haynie made regarding Krystal's membership in Stat. However, regardless of such misrepresentations, those loans were ultimately paid back in full. As a result, the requisite element of damages cannot be established.

MEMORANDUM OF DECISION - 16

Case 17-07010-TLM    Doc 61    Filed 06/23/20    Entered 06/23/20 15:12:05    Desc Main
Document        Page 17 of 24

intend to remedy the formation and membership issues of Stat.  Rather, by this behavior Haynie froze Krystal out of Stat while attempting to keep him from more aggressively pursuing his asserted ownership interest in Stat.

Based on the evidence presented at trial, including the evaluation of weight and credibility of witness testimony, this Court finds and concludes that Haynie knowingly and intentionally misrepresented his intentions to form Stat with Krystal as a member and, later, his intentions to remedy the failure to include Krystal as a member of Stat. Krystal relied on Haynie's promises and continued his relationship with Haynie and Stat. As a result, Krystal was damaged by not receiving his share of the profits of Stat or the Davis sale.  Thus, the debt established by the Second State Judgment will be excepted from discharge under 523(a)(2)(A).

### 2.    Section 523(a)(4)

Krystal asserts the debt established in the Second State Judgment is not dischargeable under the fraud or defalcation exception to discharge under § 523(a)(4). Doc. No. 1 at 8.  Section 523(a)(4) excepts from discharge "any debt . . . for fraud or defalcation while acting in a fiduciary capacity."  To prevail on a cause of action under § 523(a)(4), Plaintiffs must not only show Debtor's fraud or defalcation, but also that Debtor was acting in a fiduciary capacity when he committed the fraud or defalcation. *See Teichman v. Teichman (In re Teichman),* 774 F.2d 1395, 1398 (9th Cir.1985).

This Court previously held in *Murray v. Woodman (In re Woodman)*, 451 B.R. 31 (Bankr. D. Idaho 2011):

The definition of "fiduciary capacity" under § 523(a)(4) is a narrow one and is governed by federal law:

> The broad, general definition of fiduciary—*a relationship involving confidence, trust and good faith*—is inapplicable in the dischargeability context. . . . The fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt.
>
> *Cal–Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119, 1125 (9th Cir. 2003) (internal citations omitted). These requirements exclude constructive, resulting or implied trusts. *See Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir. 1986) (citing *Runnion v. Pedrazzini (In re Pedrazzini),* 644 F.2d 756, 759 (9th Cir. 1981)).
>
> Additionally, while the meaning of "fiduciary capacity" is a question of federal law, state law is to be consulted to ascertain whether the requisite fiduciary relationship exists. *Cantrell,* 329 F.3d at 1125 (9th Cir. 2003) (citing *Lewis v. Scott (In re Lewis),* 97 F.3d 1182, 1185 (9th Cir. 1996)).

*Id.* at 38–39 (Bankr. D. Idaho 2011) (emphasis added).

Even though the Second State Judgment concluded the Deal Points was a valid and enforceable contract between Krystal and Haynie, the terms therein do not expressly establish a fiduciary relationship between the two individuals. Krystal argues that his relationship with Haynie was a joint venture which creates a fiduciary relationship. Doc. No. 34 at 7–8. But even if a joint venture existed, the fiduciary obligations created thereby clearly fall into the general definition of "fiduciary." *Rains v. Walby*, 537 P.2d 833, 836 (Wash. App. Ct. 1975) ("The relationship between joint adventurers [*sic*] is a fiduciary one imposing upon each participant the duty of *good faith, fairness, candid disclosure and honesty* in all matters pertaining to the agreement"). This is insufficient for purposes of § 523(a)(4) which requires an "express or technical trust." *Woodman*,

*supra* at 38-39 (citing *Cantrell*, 329 F.3d at 1125).  Therefore, Krystal has failed to establish a debt excepted from discharge under § 523(a)(4).

### 3.    Section 523(a)(6)

Krystal asserts the debt established by the Second State Judgment is nondischargeable under § 523(a)(6).  Section 523(a)(6) excepts from an individual debtor's discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  *B.K.L.N. v. Finlay (In re Finlay)*, 2019 WL 3294804, at *3 (Bankr. D. Idaho July 22, 2019).  However, § 523(a)(6) does not except from discharge an injury resting solely on a breach of contract.  The Ninth Circuit Court of Appeals explained:

> It is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6).  *See Barbachano v. Allen,* 192 F.2d 836, 838 (9th Cir. 1951); *In re Akridge,* 71 B.R. 151, 154 (Bankr. S.D. Cal. 1987) (debts that are excepted from discharge under § 523(a)(6) relate solely to tortious liabilities, not debts stemming from breach of contract).  *An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct.*

*Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992) (emphasis added).  In this case, the state court determined Haynie intentionally breached the Deal Points.  Ex. 129 at 4.  Thus, the Court must determine whether Haynie's breach was accompanied by "malicious and willful tortious conduct."  *Riso*, 978 F.2d at 1154.

### a.    Tortious Conduct

The court in *Riso* did not identify specific tortious conduct that must accompany an intentional breach of contract.  978 F.2d at 1154.  Fraud is an action in tort.  37 Am. Jur. 2d *Fraud and Deceit* § 12 (2020) ("Fraud actions are personal injury actions.[] Fraud

MEMORANDUM OF DECISION - 19

is an independent, willful tort").  The Court has already addressed the issue of fraud in

the context of § 523(a)(2)(A), and concluded Haynie made fraudulent representations

about his intent to form the LLC with Krystal as a member and his promised attempts to

rectify the errors in the formation of Stat that were inconsistent with the Deal Points.  The

Court concluded these fraudulent misrepresentations satisfied the elements of fraud under

§ 523(a)(2)(A).  These misrepresentations would also be sufficient for the purpose of

§ 523(a)(6) **if** accompanied by willful and malicious conduct.

> **b.    Willfulness**

This Court recently addressed what is required for conduct to be "willful" under

§ 523(a)(6) in *Finlay*:

> To satisfy the willfulness prong, the creditor must prove the debtor
> deliberately or intentionally injured the creditor.  *Dominguez v. Elias (In re
> Elias)*, 302 B.R. 900, 907 (Bankr. D. Idaho 2003).  "[N]ondischargeability
> takes a deliberate or intentional *injury*, not merely a deliberate or intentional
> *act* that leads to injury."  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).
> Elaborating on the debtor's state of mind required by the statute, the Ninth
> Circuit has explained that a debtor must possess a subjective motive to inflict
> injury, or believe that injury is substantially certain to result from his
> conduct.  *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1143 (9th Cir. 2002); *Quinn
> v. Barry (In re Barry)*, 2005 WL 1463447, *1 (9th Cir. June 22, 2005);
> *Khaligh*, 338 B.R. at 831.  The debtor's actual knowledge that harm to the
> creditor was substantially certain to result may be shown through
> circumstantial evidence of "what the debtor must have actually known when
> taking the injury-producing action."  *Elias*, 302 B.R. at 907 (citing *Su*, 290
> F.3d at 1146 n.6).

*Id.* at *3.

Here, the Court determines Haynie's breach of the Deal Points, and his

misrepresentation regarding the formation of Stat and his intent to rectify the formation

errors, were intentional.  The evidence establishes Haynie knew that his conduct might

MEMORANDUM OF DECISION - 20

lead to Krystal losing future profits, control over the LLC, and a portion of the proceeds of the sale of the company. Indeed, Haynie drew $250,000 from the profits of Stat, and he refused to distribute any portion of Stat's profits to Krystal. Ex. 129 at 3. Haynie also refused to pay any portion of the proceeds of the Davis sale to Krystal above the amount already owing on loans made by Krystal's company. *Id.* The Court, therefore, concludes that Haynie repeatedly breached the Deal Points with at least the knowledge that Krystal was substantially certain to suffer injury. Thus, the "willful" element of § 523(a)(6) is met.

### c.    Maliciousness

*Finlay* also provides the standard to establish malicious conduct under § 523(a)(6): "to prove maliciousness for purposes of § 523(a)(6) . . . the plaintiff must prove (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) which is done without just cause or excuse." 2019 WL 3294804, at *5 (citing *Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1207 (9th Cir. 2010)).

Here, the Court has already concluded that Haynie's conduct was wrongful, intentional, and injurious. The Court further concludes that Haynie's conduct was unjustified and without excuse. Haynie repeatedly promised Krystal that he would rectify the errors made in the formation of Stat while simultaneously siphoning the profits of the company to himself. When Krystal asked for financial records and projections, Haynie agreed to provide them, but Krystal never received these financials. Haynie thereafter refused to pay Krystal any portion of the profits of Stat, or of the proceeds from the Davis sale. Haynie provided no competent or persuasive evidence to show his

conduct was justified or excusable.  Therefore, the maliciousness element of § 523(a)(6)

is met, and the debt established by the Second State Judgment is excepted from

discharge.

### 4.    Debt Excepted From Discharge

The Second State Judgment awarded Krystal $798,141.94 in damages with post-

judgment interest of 12 percent and costs of $200.00.  *Id.* at 6; Ex. 129 at 2.  As this

Court concludes the debt established by the Second State Judgment is not dischargeable

under § 523(a)(2)(A) and (a)(6), and said judgment is preclusive on the issue of damages,

the entire amount awarded in the Second State Judgment, including post-judgment

interest and costs, is excepted from discharge.

## C.    Attorney's Fees and Costs

Krystal requests that this Court award him his attorney's fees and costs.  Doc. No.

1 at 11.  This Court explained in *Kilborn v. Haun (In re Haun),* 396 B.R. 522, 527

(Bankr. D. Idaho 2008) (quoting *Bertola v. Northern Wisconsin Produce Co., (In re*

*Bertola)*, 317 B.R. 95 (9th Cir. BAP 2004)):

> In federal courts, attorneys' fees ordinarily are not recoverable by the
> prevailing party in an action except by contract or by statute.  *Alyeska*
> *Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257, 95 S. Ct. 1612,
> 44 L. Ed. 2d 141 (1975).  This principle is known as the American Rule.
>
> In addition to the American Rule, there is no general right to recover
> attorneys' fees under the Bankruptcy Code.  *Heritage Ford v. Baroff (In re*
> *Baroff),* 105 F.3d 439, 441 (9th Cir.1997).  Instead, whether fees may be
> awarded in bankruptcy proceedings generally depends, in part, on whether
> the case involves state or federal claims and whether the applicable law
> allows such fees.  "[A] prevailing party in a bankruptcy proceeding may be
> entitled to an award of attorney fees in accordance with applicable state law
> if state law governs the substantive issues raised in the proceedings." *Id.; see*

MEMORANDUM OF DECISION - 22

*also Am. Express Travel Related Servs.  Co. v. Hashemi (In re Hashemi),* 104
F.3d 1122, 1126–27 (9th Cir.1996).

*Id.* at 99–100.

However, the *Haun* only allows for fees in establishing the ***claim*** under state law,
and not the nondischargeability of that claim.  *Stover v. Stover (In re Stover)*, 2016 WL
4538459, at *1 (Bankr. D. Idaho Aug. 30, 2016) ("Fundamentally, *Haun* recognizes that,
at times, a creditor may have to establish through bankruptcy court litigation, its claim
(per state law) as well as the nondischargeability of that claim (per bankruptcy law).
Given this dual nature, fees under state law may be available for the former.").  Here the
claim was established in state court in the Second State Judgment, and only the legal
determination of nondischargeability was before this Court.

The Court therefore concludes that Krystal is not entitled to a separate award of
attorney's fees in this § 523(a) action.  While Krystal presented testimony and
documentary evidence in this adversary proceeding, he solely relies on the Second State
Court Judgment as establishing the damages suffered from Haynie's conduct.  Having
obtained the benefit of issue preclusion on the underlying debt, only the bankruptcy
issues under § 523(a) remained to be decided by this Court.  Therefore, Krystal's counsel
is not entitled to an award of attorney's fees for prevailing on the § 523(a)(2)(A) and
(a)(6) claims.

However, costs will be allowed pursuant to Rule 7054(b), LBR 7054.1, and 28
U.S.C. §§ 1920–24.  Notwithstanding the ordinary time provisions of LBR 7054.1, the
Court determines and will order that Krystal shall file an appropriate bill of costs for the

MEMORANDUM OF DECISION - 23

Court's consideration within 10 days of the entry of this Decision, and any objections by Haynie shall be filed within 10 days of the filing by Krystal.

**CONCLUSION**

Based on the foregoing, this court concludes that the debt established by the Second State Judgment entered against Haynie is nondischargeable under § 523(a)(2)(A) and (a)(6).  Costs will be awarded.  The Court will enter an appropriate judgment once costs are established.

DATED:  June 23, 2020

_____
TERRY L. MYERS
U.S. BANKRUPTCY JUDGE